OPINION OF THE COURT
Simons, J.
The novel question presented by this appeal is whether the right of an adopted-out child to inherit from his natural family extends to his daughter, the petitioner in this proceeding, who is otherwise qualified to inherit under EPTL 4-1.1, or whether the daughter is precluded by Domestic Relations Law § 117 from sharing in a natural family member’s estate. At stake is an estate of approximately $1 million to be distributed either to petitioner, the half niece of decedent, or to objectants, decedent’s first cousins. The Surrogate found that petitioner was not a distributee of decedent and the Appellate Division affirmed for the reasons stated in his opinion (see, Matter of Seaman, 144 Misc 2d 84, affd 163 AD2d 870). We granted leave to appeal.
I
Petitioner was related to decedent as follows.
Lloyd I. Seaman (petitioner’s grandfather) married twice. His first wife, Gladys, gave birth to Lloyd Dudley Seaman (Dudley), petitioner’s father. Lloyd I. Seaman’s second wife, Mary, gave birth to a daughter (Roberta), the decedent. Thus, Dudley was Roberta’s half brother. Dudley predeceased Roberta leaving as his only issue the petitioner, Charlotte, a half niece of decedent. The objectants, the only other possible distributees, are children of Roberta’s aunt and uncles (her mother’s sister and her father’s brothers).
On these facts, and absent Dudley’s adoption, Charlotte would be the sole distributee of Roberta because half-blood *454 relatives are considered whole and she is closer in degree of kinship to decedent than the cousins. Because Dudley was adopted by his mother’s second husband, however, the Surrogate held that petitioner was foreclosed from inheriting as an intestate distributee under Domestic Relations Law § 117 (1) (e) and (f) in the absence of language expressly extending Dudley’s rights to his "issue”. Respondents contend that the Surrogate’s reading of the statute is not only correct but is supported by policy reasons stated by this Court in Matter of Best (66 NY2d 151, 155-157).
We conclude that neither the language of Domestic Relations Law § 117, the legislative history preceding it, nor policy reasons advanced in Matter of Best, support the result. Accordingly, the order should be reversed and the matter remitted to Surrogate’s Court for entry of a decree in conformance with this decision (see, SCPA 2702).
II
Intestate succession is governed by EPTL 4-1.1. As relevant here, the statute provides that if the decedent is survived by "[brothers or sisters or their issue, and no spouse, issue or parent,” the whole of the decedent’s estate shall be distributed to the brothers and sisters or their issue per stirpes (EPTL 4-1.1 [a] [7]). The statute also provides that half-blood relatives are to be treated as if they were relatives of the whole blood (EPTL 4-1.1 [d]). Thus, decedent’s half brother, Dudley, would be considered her full brother for purposes of intestate distribution and if he had not been adopted-out, petitioner would qualify as sole distributee since she is his only living issue.
EPTL 4-1.1 (f) provides, however, that "[t]he right of an adopted child to take a distributive share and the right of succession to the estate of an adopted child continue as provided in the domestic relations law.” Inasmuch as petitioner is related to the decedent through decedent’s adopted-out half brother, we turn to the Domestic Relations Law to determine what limitations, if any, that statute imposes on her right to inherit as an intestate distributee.
Domestic Relations Law § 117 (1) (b) terminates "[t]he rights of an adoptive child to inheritance and succession from and through [the] natural parents”. There are exceptions, however, and relevant here is the exception which provides for inheritance if: (1) the decedent is the adoptive child’s natural grandparent or is a descendant of such grandparent, and (2) *455 an adoptive parent is married to the child’s natural parent (Domestic Relations Law § 117 [1] [e]). Petitioner’s father Dudley came within this provision because Roberta was a descendant of Dudley’s natural grandparents (Lloyd I. Seaman’s parents), and Dudley’s adoptive father married his natural mother. Thus, Dudley’s right to inherit from or through either natural parent, as provided in EPTL 4-1.1, did not terminate upon his adoption. From this, it would seem that petitioner’s right to so inherit is equally preserved because her right is contingent, in part, on her father’s ability to inherit from the natural family following the adoption. This conclusion is supported by the language of the statutes and the legislative history preceding their enactment.
ra
Adoption was unknown to the common law of England: it exists in New York only by statute (see, Second Report of Temp St Commn on Modernization, Revision and Simplification of Law of Estates, "Intestate Succession and the Adopted Child”, 1963 NY Legis Doc No. 19, Appendix E, at 148-160; 9 Rohan, NY Civ Prac ¶ 4-1.1 [11]). Because of this, a legal adoption does not automatically terminate the children’s right to inherit from their natural kindred, nor grant them the right to inherit from their adoptive family (see, Second Report of Temp St Commn on Modernization, Revision and Simplification of Law of Estates, "Intestate Succession and the Adopted Child”, 1963 NY Legis Doc No. 19, Appendix E, at 148-152). Rather, these inheritance rights are controlled by statute.
In 1887, the Legislature granted adopted children and their heirs the right to inherit from their adoptive parents; their right of inheritance from the natural parents were not altered, however, because the statute failed to sever them (see, L 1887, ch 703; see generally, 9 Rohan, NY Civ Prac ¶ 4-1.1 [11]; Note, When Blood Isn’t Thicker Than Water: The Inheritance Rights of Adopted-out Children In New York, 53 Brooklyn L Rev 1007, 1011-1012 [1988]). Indeed, in 1896, the Legislature amended the Domestic Relations Law to state explicitly that an adopted child’s "rights of inheritance and succession from his natural parents remain unaffected by such adoption” (L 1896, ch 272, § 64). That remained the law until 1963, when the Legislature severed the adopted child’s right to inherit from biological kindred, except from a custodial and natural *456 parent who had remarried and consented to the child’s adoption by the stepparent (L 1963, ch 406, § 1 [now found in Domestic Relations Law § 117 (1) (b), (d)]; see also, Second Report of Temp St Commn on Modernization, Revision and Simplification of Law of Estates, "Intestate Succession and the Adopted Child”, 1963 NY Legis Doc No. 19, Appendix E, at 148-160; 9 Rohan, NY Civ Prac ¶ 4-1.1 [11]; Note, When Blood Isn’t Thicker Than Water: The Inheritance Rights of Adopted-out Children In New York, 53 Brooklyn L Rev 1007, 1011-1012 [1988]). In 1987, the Legislature amended the Domestic Relations Law again, this time to restore an adopted child’s right of intestate inheritance from and through either natural parent under limited circumstances (see, L 1987, ch 499 [now found in Domestic Relations Law § 117 (1) (e)]). It is this amendment which authorized Dudley to inherit from his half-, sister’s estate.
However, this case concerns the inheritance rights of Dudley’s issue, petitioner. Her right to inherit is contingent on her father’s ability to inherit from the natural family. This is so because prior to the 1963 amendment, the issue of a predeceased adopted child also retained the right to inherit from the natural family. There are no decisions directly on point, but the prevailing view of the commentators is that the issue of an adopted child retained a right to inherit from the natural family to the extent that the adopted child did because the issue of the predeceased adopted child occupied the same status as the parent would have had he or she survived (see, 9 Rohan, NY Civ Prac ¶ 4-1.1 [11]; Second Report of Temp St Commn on Modernization, Revision and Simplification of Law of Estates, "Intestate Succession and the Adopted Child”, 1963 NY Legis Doc No. 19, Appendix E, at 150, 156; see also, Binavince, Adoption and the Law of Descent and Distribution: A Comparative Study and a Proposal for Model Legislation, 51 Cornell LQ 152, 165; Legislation, New York’s Law of Estates and Distribution: The New York Status of the Adopted Child, 38 St Johns L Rev 380, 383; cf., Matter of Whitcomb, 170 Misc 579). The issue’s right to inherit from the natural family was severed, however, in 1963 when the Legislature severed the adopted child’s right to so inherit (see, Domestic Relations Law § 117 [1] [b]). From this, it follows that when the Legislature restored the right of the adopted-out child to inherit from the natural family under the circumstances specified in Domestic Relations Law § 117 (1) (e), it also restored the right of the adopted-out child’s issue to do so *457 (see generally, 9 Rohan, NY Civ Prac ¶ 4-1.1 [11]; Second Report of Temp St Commn on Modernization, Revision and Simplification of Law of Estates, "Intestate Succession and the Adopted Child”, 1963 NY Legis Doc No. 19, Appendix E, at 150, 156; Recommendation of NY Law Rev Commn to 1986 Legislature, 1986 NY Legis Doc No. 65 [B], reprinted in 1986 McKinney’s Session Laws of NY, at 2560, 2568-2576). Thus, petitioner’s right to inherit through her father from decedent is preserved under Domestic Relations Law § 117 (1) (e).
The Surrogate concluded that the Legislature did not intend to extend rights granted to the adopted-out child under Domestic Relations Law § 117 (1) (e) to the child’s issue because the Law Revision Commission failed to mention the "descendants” or "issue” of the adopted-out child in its recommendation to the Legislature and because the Legislature excluded any reference to "descendants” or "issue” when it enacted the section. It was unnecessary for the Legislature to expressly refer to the adopted-out child’s "issue” when it enacted that provision, however: it implicitly restored those rights to the issue of the adopted-out child when it restored them to the child (see generally, 9 Rohan, NY Civ Prac ¶ 4-1.1 [11]; Second Report of Temp St Commn on Modernization, Revision and Simplification of Law of Estates, "Intestate Succession and the Adopted Child”, 1963 NY Legis Doc No. 19, Appendix E, at 150, 156; Recommendation of NY Law Rev Commn to 1986 Legislature, 1986 NY Legis Doc No. 65 [B], reprinted in 1986 McKinney’s Session Laws of NY, at 2560, 2568-2576).
This conclusion is further supported by an examination of the language of the provisions of Domestic Relations Law § 117 (1) relating to the severance and restoration of the adopted child’s right to inherit from the natural family. Paragraph (b) of section 117 (1) states that the adopted child’s right to inherit from or through the natural family "shall terminate” upon the making of the order of adoption except as otherwise provided in that section. The "issue” of the adopted child is not mentioned but it follows logically that the section also implicitly severed the right of the "issue” to take (cf., Matter of Adler, 202 Misc 1100, 1103 [adoption statute which severed the natural parents’ right to inherit from the adopted child also implicitly severed the natural kindred and blood relatives rights to do so because the substructure which joined the blood relatives with the adopted child was removed and, therefore, anyone who must trace his or her relationship through a natural parent may not inherit from the adopted *458 child]). Paragraph (e) of section 117 (1) states that the adopted child’s right to inherit from or through the natural family "shall not terminate,” in limited circumstances, upon the making of the order of adoption. "Issue” of the adopted child is not mentioned in that section either but, because the provisions of section 117 (1) (b) and (e) are symmetrical, it follows that the issue’s right to inherit was implicitly restored under that provision (cf., Matter of Monroe, 132 Misc 279, 281 [foster child’s right to inherit from blood relative was preserved because the adoption statute did not expressly dissolve the child’s right to inherit from the natural parents and, therefore, the foundation which joined that child to his blood relatives remained unaltered by adoption]).[1]
Moreover, inclusion of the word "issue” in Domestic Relations Law § 117 (1) (e) was unnecessary because whether the issue of a predeceased adopted child inherits through that child from the natural family is determined Iby the provisions in EPTL 4-1.1, unless otherwise expressly limited in the Domestic Relations Law (see, Carpenter v Buffalo Gen. Elec. Co., 213 NY 101, 104 [adoption statute must be read in connection with the provisions of the Decedent Estate Law]; Matter of Landers, 100 Misc 635; EPTL 4-1.1 [f]; see generally, 9 Rohan, NY Civ Prac ¶ 4-1.1 [6]). The adoption statute and the descent and distribution statute are in pari materia, and should be read and construed together whenever possible. This is so, because the adoption statute does not completely define the incidents of the relation between the adopted child and its natural kindred, but merely determines what limitations, if any, are imposed on that relationship (see generally, 46 NY Jur 2d, Domestic Relations, §§ 506-513; 2 NY Jur, Adoption, §§ 13-22). Indeed, the Law Revision Commission reports on the enactment of Domestic Relations Law § 117 (1) (e) support this reading of the statutes by referring to EPTL 4-1.1, indicating the Commission’s intent to continue the rights of an adopted child and those inheriting by representation, i.e., the surviving issue, to take from the natural family in accordance with the Estates, Powers and Trusts Law (see, Mem of NY Law Rev *459 Commn, 1987 McKinney’s Session Laws of NY, at 1926; Recommendation of NY Law Rev Commn to 1987 Legislature, 1987 NY Legis Doc No. 65 [E], reprinted in 1987 McKinney’s Session Laws of NY, at 1929; Recommendation of NY Law Rev Commn to 1986 Legislature, 1986 NY Legis Doc No. 65 [B], reprinted in 1986 McKinney’s Session Laws of NY, at 2560, 2585-2586).
It is also noteworthy that the Law Revision Commission, in its 1987 recommendation for enactment of the current Domestic Relations Law § 117 (1) (e), stated that it believed "there should be no distinction between the right of inheritance under the laws of intestacy and that under the law of wills and other instruments where the adopted-out person remains within the natural family unit” (Recommendation of NY Law Rev Commn to 1987 Legislature, 1987 NY Legis Doc No. 65 [E], reprinted in 1987 McKinney’s Session Laws of NY, at 1930, 1941-1942; see also, 1986 McKinney’s Session Laws of NY, at 2560, 2586-2587). Under section 117 (2) (b) of the Domestic Relations Law, a class gift in a will or lifetime instrument includes the adopted children and their issue. While distinctions exist between the laws of intestacy and the laws of wills, the Commission sought consistency between them to the extent possible in the case of adopted-out persons who remain within the natural family unit, even absent an express reference to "issue” in Domestic Relations Law § 117 (1) (e).
Finally, the Surrogate concluded that petitioner was not qualified to take because Domestic Relations Law § 117 (1) (f) permitted distributees of an adopted-out child to inherit solely through the adoptive parent, and not through the replaced natural parent. His conclusion rested on the statutory language that "[t]he right of inheritance of an adoptive child extends to the distributees of such child and such distributees shall be the same as if he were the natural child of the adoptive parent.” The manifest purpose of this provision is to ensure that the distributees of the adopted child are determined in relation to the child’s adoptive family members, and not his natural family members whose ties have been severed pursuant to the Domestic Relations Law (see, Carpenter v Buffalo Gen. Elec. Co., 213 NY 101, supra; Matter of Riggs, 109 Misc 2d 644; see also, Second Report of Temp St Commn on Modernization, Revision and Simplification of Law of Estates, "Intestate Succession and the Adopted Child,” 1963 NY Legis Doc No. 19, Appendix E, at 148, 150). We find no support *460 for the contention that it was intended to limit the distributees’ right of inheritance to the adoptive family. Thus, absent an express provision to the contrary in Domestic Relations Law § 117, petitioner could inherit through her adopted-out father under EPTL 4-1.1 (a) (7).
IV
The policy considerations advanced in Matter of Best (66 NY2d 151, 155-157, supra) do not require a different construction of the statute.
In Best, we held that a child born out of wedlock and adopted out of the biological family at birth was not entitled to share in a trust estate devised by his biological grandmother to her daughter’s issue. In so holding, we identified several policy considerations militating against the child’s claim: we concluded that recognition of a right to inherit would be inconsistent with the child’s complete assimilation into the adoptive family, would undermine the stability and finality of administration of estates because there would always lurk the possibility of uncited and unknown persons, would lead to a breach of confidentiality of adoption records, and would allow the child to inherit from both the biological and adoptive families (see, Matter of Best, 66 NY2d 151, 155-157, supra).
Respondents maintain that these policy considerations apply equally here, where an adopted-out child’s issue seeks to inherit from the biological family that has been replaced by the adoptive family. Best is distinguishable, however, because it involved a child who was born out of wedlock and adopted by strangers. In the case before us, the adopted child was adopted by his mother’s second husband following her divorce from the child’s father — a form of adoption over which we reserved decision expressly in Matter of Best (supra, at 155, n 1). It is clear that the Legislature considered the distinction between these types of cases when it revised the Domestic Relations Law in 1986 and 1987, following our decision in Best, and restored the inheritance rights of children adopted by close natural kindred concluding that cases such as this, involving the exceptions contained in Domestic Relations Law § 117 (1) (e), should be treated differently from other adoptions because they invariably involve situations in which natural *461 family ties are maintained[2] (see, Recommendation of NY Law Rev Commn to 1986 Legislature, 1986 NY Legis Doc No. 65 [B], reprinted in 1986 McKinney’s Session Laws of NY, at 2560, 2562-2565; 1987 McKinney’s Session Laws of NY, at 1928, 1930-1931).
The Law Revision Commission, in its report on the Domestic Relations Law amendment, acknowledged the various policy concerns raised in Matter of Best (supra) and specifically addressed each. On the issue of disrupting the adopted child’s assimilation into the adoptive family, it concluded that complete severance of the natural relationship was not necessary when the adopted person remained within the natural family unit as a result of an intrafamily adoption (see, 1986 McKinney’s Session Laws of NY, at 2560, 2573, 2582-2583; 1987 McKinney’s Session Laws of NY, at 1928, 1931-1935, 1941-1942). The Commission further concluded that the amendments would not create "uncertainty” in titles of property because in most cases there would be knowledge within the family of the identity of all the parties since only children adopted by closely related persons are eligible to inherit under the amendments to Domestic Relations Law § 117, and that this knowledge of the adoption would also prevent the need to breach the privacy of the adoption proceedings (see, 1986 McKinney’s Session Laws of NY, at 2560, 2574-2575, 2584-2585; 1987 McKinney’s Session Laws of NY, at 1928, 1940-1942). Finally, it discussed the problem of allow *462 ing inheritance from both the natural and adoptive family and concluded that this was a logical consequence when there are adoptions within the natural family unit (see, 1986 McKinney’s Session Laws of NY, at 2560, 2575-2576; 1987 McKinney’s Session Laws of NY, at 1928, 1940-1941). Thus, the policy concerns raised in Matter of Best were thoroughly addressed by the Commission when it proposed that the Legislature amend the Domestic Relations Law and reinstate the rights of an adopted child to inherit from the natural family under limited circumstances. Inasmuch as the Legislature by enacting these amendments chose to set aside the concerns of Best, and it did so without limiting the right of the issue of the adopted-out child to inherit from the natural family, we conclude it intended no limitation.
Accordingly, the order of the Appellate Division should be reversed, with costs, and the matter remitted to Surrogate’s Court for the entry of a decree in accordance with this opinion.
Chief Judge Wachtler and Judges Kaye, Alexander, Ti-tone, Hancock, Jr., and Bellacosa concur.
Order reversed, with costs to all parties appearing separately and filing separate briefs payable out of the estate, and matter remitted to Surrogate’s Court, Onondaga County, for further proceedings in accordance with the opinion herein.

. It is noteworthy that Domestic Relations Law § 117 (1) (d), which preserves the inheritance rights of the adopted child from and through a custodial natural parent when the child is adopted by a stepparent, does not expressly refer to the "issue” of an adopted child. Yet, it would seem indisputable that the rights of the "issue” would be implicitly preserved (§ 117 [1] [d]) in that situation, to the extent not otherwise expressly limited by Domestic Relations Law § 117.

. Intrafamily adoptions are the type of adoptions covered by Domestic Relations Law § 117 (1) (e) and (2) (b), and typically include situations where an orphaned child is adopted by a blood relative; where one biological parent dies while still married to the other, and the surviving biological parent eventually marries a new spouse who adopts the child; or where, as here, following divorce of the biological parents the custodial parent remarries and the stepparent adopts the child with the consent of, or after the death of, the noncustodial parent (Recommendation of NY Law Rev Commn to 1987 Legislature, 1987 NY Legis Doc No. 65 [E], reprinted in 1987 McKinney’s Session Laws of NY, at 1928, 1931-1932). In these types of cases, the Legislature has chosen not to cut off inheritance ties between the adopted-out child and the natural family that has been replaced because of the likelihood of continued contact with that family. It is true, as noted by the Surrogate, that in the case at bar petitioner apparently had no contact with her father’s natural family. However, this fact is irrelevant for purposes of determining whether petitioner is qualified to inherit as a distributee of the decedent. The quantum of contacts or closeness between a distributee and a decedent was already considered by the Legislature when it defined the degree of kinship necessary to qualify adopted-out children and their issue as distributees under Domestic Relations Law § 117 and EPTL 4-1.1.